JOSEPH H. GAINER *et als.* *vs.* JOHN C. DUNN *et als.*

MARCH 30, 1908.

PRESENT: Douglas, C. J., Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1) *Elections.   Board of Canvassers.*

The board of canvassers and registration of the city of Providence is not a department of the municipal government; its powers, duties, liabilities, and functions are created and defined by the constitution and laws of this State and of the United States. Although its jurisdiction and duties are territorially limited to the city of Providence, they constitute a board of State officers exercising a State function rather than a board of municipal officers exercising a municipal function.

(2) *Powers of Board of Canvassers.*

In the determination of electoral qualifications and the preparation of the voting-lists the board exercises judicial power, and the court has previously held that it has no jurisdiction to command the addition of a name to or the removal of a name from the voting-list by the board.

(3) *Judicial Powers of Board.   Decision final.*

Pub. Laws cap. 363, § 4, grants judicial power to the board of canvassers and registration, and this power is conferred for the determination and decision of any question, or the discharge of any duty required by law of said board; it creates a tribunal meeting at a fixed time and place for the purpose of counting ballots cast at a municipal election; with power to compel the attendance of witnesses; and the production of books, records, and evidence, necessary to decide upon the validity of ballots, and the determination of the board as to the election of members of the city council of the city of Providence is final.

(4)  *Powers of Board not repealed.*

The powers conferred upon the board of canvassers and registration by chapter 363, Pub. Laws, are not repealed by Pub. Laws cap. 829, passed March 21, 1901, or cap. 1229, passed April 26, 1905.

PETITION IN EQUITY in nature of *quo warranto*.   Dismissed.

BLODGETT, J.   This is a petition in equity in the nature of *quo warranto*, under the provisions of cap. 263, Gen. Laws, preferred against John C. Dunn as alderman, and Albert Hainsworth, Harris G. Easterbrooks, Vito N. Famiglietti, and John J. O'Neil, as members of the common council, respectively, from the third ward of the city of Providence, in which the petitioners aver that the respondents were not elected to the offices aforesaid at the municipal election held on November 5, 1907, and that the petitioners were elected thereto.

The petition avers that certain ballots cast at said election were wrongfully counted for the respondents by virtue of an erroneous construction of the effect of the marking of them, and that the counting of certain other ballots was challenged.

The respondents have moved to dismiss the petition on the ground that under cap. 363 of the Pub. Laws, passed May 14, 1896, jurisdiction of the matter in question is vested in the board of canvassers and registration of said city, and that their action is not reviewable here in a proceeding of this nature.

What, then, are the powers of the board in the premises? Without attempting a comprehensive enumeration of all the duties imposed by law upon this board, it may be said, generally, that it is charged with the supervision of the registration of voters, the preparation of the voting-lists, and the holding of caucuses in the city of Providence, and also with the personal counting of the ballots cast in that city at all elections for municipal officers.   While its members are elected in joint committee of the two branches of the city council, the board is in no sense a department of the municipal government.   Its tenure of office, powers, duties, and liabilities, and all its functions, are created, imposed, and defined by the constitution and laws of the United States and the constitution and laws of this State, and no municipal ordinance can enlarge or diminish

them, inasmuch as the exercise of the elective franchise is not a subject of municipal control or regulation. While their jurisdiction and their duties are territorially limited to the city of Providence, their duties are of general concern; and thus they constitute a board of State officers exercising a State function rather than a board of municipal officers exercising a municipal function. *City of Newport* v. *Horton*, 22 R. I. 196, 209; *Opinion of the Justices*, 22 R. I. 654. Their jurisdiction extends in federal elections over more than one-half of the electorate of the first congressional district, and over nearly two-fifths of the entire electorate of the State for electors of President and Vice-President. In State elections nearly two-fifths of the electorate for governor and other general officers of the State are under their jurisdiction, as well as the entire electorate of the senatorial representation of the city of Providence in the General Assembly, and the entire electorate of one-sixth of the House of Representatives. While the electorate of the city of Providence for all municipal officers elected by the people is determined by this board, they are constituted a counting and returning board for municipal officers only.

(2) In the determination of these electoral qualifications and the preparation of the voting-lists for use at caucuses and at elections, this court has held that the board exercised judicial power and that this court had no jurisdiction in *mandamus* proceedings to command the addition of a name to the voting-list or the removal of a name therefrom. *Williams* v. *Champlin*, 26 R. I. 416, and cases cited (1904).

The effect of a recount by the board of the votes cast at a caucus was considered in *Cannon* v. *Board of Canvassers*, 24 R. I. 473 (1902) and this court, speaking by Stiness, C. J., there held that the provisions of the statutes in that regard (Pub. Laws cap. 662 (1899) and cap. 867 (1901) "gave to the board judicial powers which control the case before us. . . . These provisions are a plenary grant of judicial power." In that case there was a finding by the board "that there were intrinsic evidences of irregular practice, amounting to fraud in law, by reason of which they declined to certify the result of the recount, because thereby they would certify

to a result which they had reasonable ground to believe was: obtained by fraud, and which they believed to be wrong and incorrect," and the court held that this finding "was, in fact, a return to the city clerk that no valid nominations had been made," adding: "This was within their province to find and their judgment is final." And see *Greenough* v. *Lucey*, 28 R. I. 230.

Having thus summarized the effect of the finding of the board in matters of registration and holding of caucuses, there remains for consideration the effect of its finding in the discharge of its duties in the counting of votes cast for municipal officers.

The petitioners contend that under the decision in *State* v. *Kearn*, 17 R. I. 391 (1891), these duties should be held to be ministerial and not judicial. To this contention it may be observed that that decision was made upon the effect of the provisions of cap. 10 of the Pub. Stats., now repealed, and also that by § 4, cap. 363, Pub. Laws, *supra*, the following additional powers were given to the board in question:

"SEC. 4. The members of said board are hereby severally authorized to administer oaths, and said board, in all cases of every nature pending before it, is hereby authorized and empowered to summon witnesses by subpœna signed by the clerk of said board, and to compel such witnesses to attend and testify in the same manner as witnesses are compelled to appear and testify in either division of the supreme court, and said board is authorized to compel the production of all papers, books, documents, records, certificates, or other legal evidence that may be necessary or proper for the determination and decision of any question or the discharge of any duty required by law of said board, by issuing a subpœna *duces tecum*, signed by its clerk; and every person disobeying any such writ shall be considered as in contempt, and said board may punish any contempt of its authority in like manner as contempt may be punished by either division of the supreme court. Any person who shall wilfully swear falsely in any proceeding, matter or hearing before said board, shall be deemed guilty of the crime of perjury."

The foregoing provisions unquestionably grant judicial power, and the statute confers this power, "for the determination and decision of any question or the discharge of any duty required by law of said board."

Indeed, the language used is identical with that contained in § 19 of cap. 825 of the Pub. Laws, passed March 6, 1901, entitled "An act creating a state returning board and defining its duties" in respect of the general officers of the State, and whose certificates are by section 4 thereof declared to be "final and conclusive evidence of the matters in them contained and of the title of the persons declared elected to the offices for which they have severally received certificates of election." These powers are not conferred upon any of the town councils or other bodies charged with the duty of counting ballots elsewhere in the State.

The powers and duties of the board of canvassers and registration, under the provisions of § 2 of cap. 363, Pub. Laws, *supra*, in respect of the counting of ballots cast for municipal officers, are thus expressed: "Said ballots shall be counted by the members of said board in person and in open meeting, and any candidate for any office to be filled at any such election or any person authorized by him in writing may be heard for or against the counting or rejection of any ballots cast thereat, and said board shall determine all questions as to the validity of such ballots." The board acts under the sanction of a penalty which is almost, if not quite, without precedent in the severity of its punishment of malfeasance on the part of a public officer, as follows: "SEC. 3. Any member of said board who shall knowingly make any false count, return, record, or certificate of any kind relative to the count of said ballots, or the determination of the result of any such election or the voting upon any such proposition as aforesaid, shall be subject to a fine of not exceeding five thousand dollars or to imprisonment not exceeding five years or to both such fine and imprisonment."

The language of said section 2 is perfectly clear as to the effect of the finding of the board that there has been no election, viz.: "Whenever it shall appear from the certificate of

said board that no person has been lawfully elected to any office, said city clerk shall thereupon forthwith notify the mayor of said city in writing, and, as soon as may be thereafter, said mayor shall convene the board of aldermen, and said board of aldermen shall issue warrants for another election."

(4)    Counsel for the petitioners admitted at the argument that the contention of the respondents that judicial power was thus granted to the board under the provisions of the statutes above set forth was not incorrect, but contended that they were repealed by sections 19 and 31 of chapter 829, Public Laws, passed March 21, 1901, and sections 24 and 27 of chapter 1229, Public Laws, passed April 26, 1905.

We can not assent to this contention. Section 19 of said chapter 829 did, indeed, impose the additional duty upon the board of convening upon "the day following any election for members of the general assembly." By the provisions of section 6 of article VIII of the constitution in force at the time of the passage of Chapter 363 (1896), ballots for members of the General Assembly were to be counted in Providence by the mayor and aldermen, and so were expressly excepted from the jurisdiction of the board of canvassers and registration by the provisions of section 1 of said chapter 363. This constitutional provision was repealed by the adoption of the eleventh amendment to the constitution, on November 6, 1900, and it thereupon became necessary to make other provision for the counting thereof. But it will be observed that this statute does not purport to give finality in such a case, the language of section 5 of chapter 828 of the Public Laws providing only that the board of canvassers and registration should "count and tabulate" the same, inasmuch as the constitution, article IV, section 6, provides that "Each house shall be the judge of the elections and qualifications of its members." Corbett v. Naylor, 25 R. I. 520. The repealing clause, section 31 of Chapter 829, is limited to those provisions only of existing law which are inconsistent with it, and is further limited in its effect "so far as they apply to the conduct of elections held for any of the officers or for voting upon any proposition or question named in this act." Even if the words

"conduct of elections" can be held to include the official counting of the ballots subsequent to the day of the election, we fail to find any provision herein contained which is inconsistent with the powers theretofore vested in the board in respect of the question now before the court.

By the provisions of section 13 of chapter 1229, Public Laws, passed April 26, 1905, it was provided that all ballots cast for senators and representatives in the General Assembly should be thereafter "counted and tabulated" by the State returning board and should be no longer counted in Providence by the board of canvassers and registration as provided by said chapter 828, Public Laws. This obviously relieved this board, as well as the several town councils and boards of aldermen throughout the State, from the duty of convening upon the day following the day of an election for members of the legislature, as well as of the duty and jurisdiction to count the votes cast at such election, and section 24 of chapter 1229 amended the aforesaid section 19 of chapter 829 in that respect. We see nothing in this section, or in section 27 of chapter 1229, inconsistent with the powers theretofore vested in this board in respect of the question now before the court.

(3)   An examination of the provisions of said chapter 363 discloses the creation of a tribunal meeting at a fixed time and specified place for the purpose of counting ballots cast at a municipal election; that the ballots cast must be examined and counted by the members of this tribunal in person, and not by assistants, and in open session; that adequate provision is made for the representatives of all candidates to be present and to be heard for or against the counting of any ballots; that witnesses may be compelled to attend and testify, and books, records, and all other legal evidence necessary to decide upon the validity of a ballot may be required under penalty of punishment for contempt of its process for non-compliance; that false swearing in any material matter relative to such a count is made perjury; "and said board shall determine all questions as to the validity of such ballots."

These are the powers of a judicial tribunal or court, and are not powers which are merely ministerial in their nature.

It is not disputed that the respondents have been by the board duly determined and declared elected to the offices in question, as shown by their several certificates of election presented to this court. Full and final jurisdiction to make this determination and declaration in respect of the contentions urged in this case having been vested in the board of canvassers and registration as the tribunal established by law for that purpose, it there remains, and the petition must accordingly be dismissed.

*John W. Hogan,* for petitioners.

*Barney & Lee and Frank H. Wildes,* for respondents.